*11cv141 comp.*

## UNITED STATES DISTRICT COURT

FILED

## DISTRICT OF CONNECTICUT

2011 SEP 13  A 9: 48

**Date:** September 13, 2011

US DISTRIC. COURT
HARTFORD CT

3:11CV141 OCFD

**Plaintiff:**

Carla Levesque

**Defendants:**

State of Connecticut:  Department of Children and Families (DCF)

Dannel Malloy (Governor, State of Connecticut)--is being sued individually and in
his capacities as the Governor of the State of Connecticut responsible for
the administrative authority to recommend appointments to the legislature
for appointment to Departments which have reporting responsibilities to
the Officer of the Governor of the State of Connecticut

Joette Katz (Commissioner DCF)---is being sued individually and in her
capacities as a public official employed by the State of Connecticut and as
a public official employed as a Justice of the Supreme Court from 1992 to
2010

Attorney Susan Hamilton (former Commissioner of DCF)--is being sued
individually and in her capacities as a public official as the
Commissioner of the Department of Children and Families, State of
Connecticut

Stephanie Anderson (Social Worker)---is being sued individually and in her
capacities as a public official employed as a Social Worker in the
Department of Children and Families in the State of Connecticut

Shelly Brodsky (Social Worker)--individually and in her capacities as a public
official employed as a Social Worker in the Department of Children and
families in the State of Connecticut

Attorney Brian Chizinski (Attorney, State of Connecticut)—is being sued as an
Individual as a member of the Connecticut Bar Association

1

Attorney Michael Dwyer (Attorney, State of Connecticut)—is being sued as an Individual as a member of the Connecticut Bar Association

Melissa Testa (Social Worker)—individually and in her capacity as a public official employed as a Social Worker, State of Connecticut

Sharon Romero (Parent Aide/Reunification Worker)—individually and in her capacity as an employee of Community Residences, Incorporated which is a sub-contracted entity by the State of Connecticut

Erica Kane (Parent Aide/Reunification Worker)—individually and in her capacity as an employee of Community Residences, Incorporated which is a sub-contracted entity by the State of Connecticut

## CIVIL RIGHTS COMPLAINT

### A. PARTIES

1. The Plaintiff: Carla Levesque is a resident of the State of Connecticut and is residing in the State of Connecticut.

2. The Defendant: Dannel Malloy is a resident of the State of Connecticut and is employed as the Governor of the State of Connecticut and has offices at The Capitol Office Building, 210 Capitol Avenue, Hartford, Connecticut 06106. He is being sued as an individual and as a public official.

3. The Defendant: Joette Katz is a resident of the State of Connecticut and is employed as the Commissioner of the Department of Children and Families. She maintains offices at 505 Hudson Street, Hartford, Connecticut 06106. She is being sued as an individual and as a public official.

4. The Defendant: Attorney Susan Hamilton is an attorney in private practice in the State of Connecticut and maintains offices at P.O. Box 330125 West Hartford, CT 06133-0125. Attorney Hamilton is a resident of the State of Connecticut. Attorney Hamilton was employed as the Commissioner of Children

2

and Families of the State of Connecticut.  She is being sued as an individual and

in her capacity as a public official serving the State of Connecticut as the

Commissioner of DCF from 2008 until her resignation on January 4, 2011.

5.  The Defendant:  Stephanie Anderson is a Social Worker for DCF in the State

of Connecticut.  She maintains offices at the Department of Children and

Families, 2081 South Main Street, Middletown, CT 06457.  She is being sued

individually and in her capacity as a public official employed by the State of

Connecticut.

6.  The Defendant:  Shelly Brodsky is a Social Worker for DCF in the State of

Connecticut.  Shelly Brodsky maintains offices at the Department of Children and

Families, 121 Main Street Extension, Middletown, CT 06457.  She is being sued

individually and in her capacity as a public official employed by the State of

Connecticut.

7.  The Defendant:  Attorney Chizinski is an Attorney who was appointed by the

Department of Children and Families.  He is being sued individually.

8.  The Defendant:  Melissa Testa is a Social Worker for DCF in the State of

Connecticut.  Melissa Testa maintains an office at One West Main Street,

Meriden, CT 06451.  She is being sued individually and in her capacity as a

public official employed by the State of Connecticut.

9. The Defendant:  Sharon Romero is a Parent Aide/Reunification Worker for

Community Residences Incorporated, a subcontracted entity by the State of

Connecticut.  Sharon Romero maintains an office at 205 Kelsey Street, 2nd Floor

3

Newington, CT 06111. She is being sued individually and in her capacity as an employee of a subcontracted entity by the State of Connecticut.

10. The Defendant: Erica Kane is a Parent Aide/Reunification Worker for Community Residences Incorporated, a subcontracted entity by the State of Connecticut. Erica Kane maintains an office at 205 Kelsey Street, 2nd Floor Newington, CT 06111. She is being sued individually and in her capacity as an employee of a subcontracted entity by the State of Connecticut.

## B.   JURISDICTION

11. The jurisdiction of the federal court over the operations of the Department of Children and Families is established by the orders of the court issued on September 22, 2011, by U.S. District Court Judge, the Honorable Christopher F. Droney in 3:89-CV-859 (CFD). On September 22, 2010, The U.S. District Court, District of Connecticut denied a request filed by the Defendants, M. Jodi Rell, et al., to vacate the federal court supervision of the operations of the Department of Children and Families.

12.    The Plaintiff also asserts that the State of Connecticut continues to operate the Department of Children and Families in a discriminatory manner that abridges the rights of parents in family and juvenile court proceedings under Title 42, Section 1983, 1985, 1986, 1988, and 1995 of the United States Code.

13.     The Plaintiff asserts in this filing that her First, Fourth, Fifth, Ninth, and

Fourteenth Amendment rights have not been protected in court proceedings in

case file M08-CP09-0126626 and M08-CP09-012627-B being adjudicated in the

Juvenile Court system in Connecticut.

14.     The Plaintiff also asserts in this federal complaint that the Judges of the

State of Connecticut, including former Supreme Court Justice Joette Katz, who

had been appointed by Governor Malloy and had been approved by the

legislature as the Commissioner of the Department of Children and Families,

operated outside of the "color of law" and "statutory authority" as limited by the

Connecticut General Statute 51-14.

15.     The Plaintiff asserts and alleges in this federal complaint that her rights as

a biological parent have been discriminated against in the manner in which DCF

has handled the reunification process with the Plaintiff and her minor children,

K.L. born in 1998 and J.L. born in 2001.

16.     The Plaintiff asserts that DCF does not require its social workers to submit

reports to the courts as sworn affidavits subject to prosecution for perjury.  These

reports are allowed to enter the court records, to be utilized for decision making

by the trial courts in Connecticut, and to be introduced as evidence in a manner

which compromises the rights to have such reports challenged under oath.

17.     The Plaintiff asserts that the DCF operations maintain a "publicly stated"

mission statement which suggests its purpose is to reunify children with their

parents. The Plaintiff asserts the social workers, in fact, have a quite different

agenda, which is to promote the rights of the foster care parent as a higher

priority than biological parents who may have lost temporary custody of their children.

18. In 2000, in the U.S. Supreme Court Case **Troxel v. Granville, 530 U.S. 57 (2000)**, Supreme Court Justice Sandra Day O'Connor clearly defined the extent to which parental rights must be subject to due process rights of the Fourteenth Amendment.  Yet, in the State of Connecticut, parents are denied their rights to be reunified with their children in an effort to gain federal funding through the promotion of foster care placements that, in turn, become the precursor for permanent adoption proceedings.

19.  The Department of Children and Families has indicated that it is their intent to permanently disengage the Plaintiff's rights to be reunited with her two children at a court proceeding which is to commence in Middletown, CT on September 13, 2011.

20.     Therefore, the Plaintiff asserts her rights to take this matter to federal court for adjudication.  The Plaintiff asserts that the jurisdiction of this matter in federal court is a necessary step because of the current supervision of the federal court of the Department of Children and Families which was reaffirmed on September 22, 2010.

21.     Due to the past abridgments of General Statute 51-14 by the former Supreme Court Justice Joette Katz and the close association established in her appointment by recommendation of Governor Dannel Malloy, it is appropriate for the federal court to properly investigate the circumvention of the General Statute 51-14, which limits the ability of the courts of the State of Connecticut from

abridging, enlarging, or modifying any substantive right or the jurisdiction of the courts.

22.    The failure of the State of Connecticut to protect the rights of biological parents in court proceedings in the same manner as the rights of foster parents qualifies for consideration as "discrimination" against parents who have been physically abused by their partners.

23.  In the case of the Plaintiff, as the biological mother, she protected her daughter from "continuing physical abuse" by the biological father, and moved from the State of Maine to the State of Connecticut.  Not only did the Plaintiff act in a responsible fashion in the actions she took to seek shelter in another State, but she was then subjected to a series of other physical and emotional abuses, after her divorce in 2004, and the incarceration of the biological father of her children.

24.  Poverty can not be utilized as a tool to strip children of contact and the resumption of the relationship with the biological parent who has sought the necessary remedial substance abuse program completion.  Plaintiff is working two jobs, and has enrolled in a course of educational training at Middlesex Community College, Middletown, CT, to further assist her efforts to move towards independence.  However, the reports of DCF are fraudulently contrived to provide an appearance which is not factually based.

25.    DCF has set a number of arbitrary, capricious, and unaffordable conditions to their "case plan" in order to support their view that the Plaintiff is not capable of being a "self-sufficient" biological parent.

26.  Instead, DCF has promoted a case plan which is a clear and present danger
to the rights of the Plaintiff as a biological parent and have done so in a "wanton",
"neglectful" or "malicious" manner which is not serving in the long term best
interests of the children to have a long term relationship with one of their
biological parents.

27.  Plaintiff vigorously asserts that her parental rights must be protected by the
federal court as ones which protect the Plaintiff's rights to "life, liberty and the
pursuit of happiness" embodied in maintaining the long term viable relationship
with her children.  As the U.S. Supreme Court stressed in **Stanley v. Illinois, 405
U.S. 645, 651, 92 S.Ct. 1209 (1972):**

"the parent-child relationship is an important interest that undeniably warrants
deference and absent a powerful countervailing interest, protection.  A parent's
interest in the companionship, care, custody, and management of his or her
children rises to a constitutionally secured right, given the centrality of family life
as the focus for personal meaning and responsibility."

28.  Plaintiff also states that the State of Connecticut continues to apply arbitrary
and capricious standards which infringe upon the liberty interests of the Plaintiff
to make decisions about her current living arrangements in Portland,
Connecticut.

29.  Plaintiff and her paramour categorically deny there is any validity to the
allegations set forth in the case file reports that suggest unsupported and
unauthenticated claims that the paramour, Jim Vinci, has ever engaged or would
engage in any "grooming" of the children of the Plaintiff.  Such comments are
simply libel and slander.  The paramour underwent three background checks by
DCF before any contact was permitted with the children of the Plaintiff.  Yet, the

case file worker, Shelly Brodsky, has posted slanderous and libelous comments into the case file without a shred of factual proof to support her observations.

30.  Plaintiff asserts that the condition to sever the relationship with a third party, who has no legal standing in the matter of the reunification of the Plaintiff and her children is an unlawful assertion of legal authority by DCF.

31.  Plaintiff seeks legal damages from DCF under the Federal Mandatory Restitutions Act of 1996 for the damage which has been inflicted by DCF in the series of "wanton", "neglectful" or "malicious" conduct of its operations as "public officials" under Connecticut General Statute 3-165.

32.  Plaintiff asserts in this federal pleading that the fraudulent representations in the "social workers" reports are painful and injurious to the long journey the Plaintiff has made as a victim of multiple abusive relationships in the last ten years.

33.  Plaintiff is gainfully employed in two jobs, is able to meet rent obligations of $1,000 per month, has been doing so for a substantive length of time, and is enrolled in fall classes, at Middlesex Community College, Middletown, CT, to further her education

34.  The case files of the DCF "social workers", who have been rotated on and off this case file, # 204063, provide ample proof as to why DCF should be subjected to continuing federal oversight as determined by the U.S. District court ruling by the Honorable Christopher F. Droney  in civil case 3:89-CV-859 (CFD).

## D.  NATURE OF THE CASE

9

35.   The Plaintiff and Kenneth Levesque were married in Fort Kent, Maine, and became the parents of K.L. in 1998  and J.L. in 2001.  In August 2003, the Plaintiff became aware that Kenneth Levesque was physically molesting the daughter of the marriage.

36.   The Plaintiff immediately sought the assistance of the Department of Social Services in Maine, and was provided a place of safe shelter for approximately three weeks, until the father voluntarily turned himself into the Maine State Police barracks.

37.   The Plaintiff continued to live in the marital home until further accommodations for low-income housing could be secured.  The Plaintiff was not employed at the point in time of the incarceration of her husband, and had no means of financial support from her spouse.

38. In October 2003, low-income housing was secured with the assistance of the Department of Social Services in Maine.

39.   The Plaintiff enrolled in college at University of Maine in Fort Kent, in January 2004, and the children were provided day care at an early learning intervention program, which included a parent education component.

40.   In September 2004, Plaintiff moved to Connecticut to provide a safe haven for the children of the marriage which was not dissolved until December 2004.

41.   In September 2004, the Plaintiff moved with her two children to Meriden, Connecticut and the daughter was enrolled at Roger Sherman Elementary School in Meriden, Connecticut.

42. In June 2005, at the end of the school year, the Plaintiff moved to a lower cost rental apartment in Meriden, Connecticut. In May 2005, Plaintiff received gainful employment at Fosdick Corporation in Wallingford, CT. In September 2005, the children matriculated to Nathan Hale School and to Ben Franklin pre-school.

43. In September 2005, the father of the children was convicted of assault on the minor child, and sentenced to two years in prison and six years of probation, with protective orders issued to prevent any further contact with the minor children.

44. In August 2006, the Plaintiff escaped another physically abusive relationship of a boyfriend which required relocation to a Domestic violence shelter in Middletown. The children attended school at MacDonough Elementary School, and the mother continued her employment at Fosdick Corporation.

45. Plaintiff was moved by the State of Connecticut to a domestic violence shelter in Stamford, Connecticut, in October 2006, and then was transferred to My Sister's Place, which is a home which provided temporary transitional housing in Hartford, Connecticut. The children enrolled in Milner Elementary School in Hartford.

46. Plaintiff obtained a full time job in June 2007 at Molly Maids in East Hartford, Connecticut. The children were enrolled in daycare before and after school.

47. In the fall of 2007, K.L. was attacked by a group of students at Milner Elementary School for accidentally bumping into a student on the playground at school, and was notified of the incident by childcare provider Tonya Jennings.

48.  Plaintiff protected her daughter from further harassments by appealing to the Board of Education after an unsuccessful intervention meeting between the principal and the homeroom teacher at Milner.  Children were transferred to Rawson Elementary School.

49.  Plaintiff wanted to be as independent as possible within the limited means of her own support.  Even with State of Connecticut assistance programs, the Plaintiff was finding the financial and emotional strain overwhelming and regrettably began to engage in the use of crack cocaine while involved in another relationship which was not healthy for the Plaintiff's sense of self-worth.

50.  In August, 2009, after an incident which occurred in Hartford, Connecticut, which resulted in the intervention of the police department and the Department of Children and Families, the Plaintiff immediately began a drug rehabilitation program at Rushford Center for Behavioral Services in Meriden, and received a certificate of completion on December 4, 2009.

51.  The children were placed in foster care in October 2009.  Plaintiff was determined to take the necessary steps to become financially independent and self-sufficient.

52.  Plaintiff commenced a relationship with Jim Vinci during this period of time, and this provided for a stable and drug free environment which provided for the ability for there to be "light at the end of the tunnel".  Plaintiff became gainfully employed with two jobs, one part time at Wal-Mart, as a cashier, and another with Vance Security U.S.A., now, known as Andrews International, as a security guard with hours of 8-4 daily Monday to Friday to align with the Plaintiff's plan to

12

work through the case plan suggestions to the extent that those plans were accessible to the Plaintiff during the hours not devoted to gainful employment.

53. However, in December 2010, the case workers notations to the file started to change in the tone and the nature of the observations. Despite some missed appointments due to work conflicts and illnesses, the social workers decided to decrease the visitations with the children which were one visit per week to just one visit every three weeks.

54. The Plaintiff was not provided with proper notice of the changes in the administrators of her case. Also, each new administrator came with a different set of criteria to meet. Some of these mandates are believed to be violations of the Constitutional and civil rights of the Plaintiff.

55. Despite passing three background checks which were completed by DCF on Jim Vinci, the DCF case flow administrators categorized the visitations with Jim Vinci and the children as "grooming". The Plaintiff vigorously asserts these observations by a social worker are without factual foundation, and represent an effort to provide inappropriate conditions to a case worker's role.

56. Plaintiff files this Constitutional and civil rights complaint in federal court because of the long history of the Department of Children and Families setting up arbitrary guidelines for the restoration of a parent's rights as the primary goal of DCF—not foster care adoption.

57. Plaintiff asserts she has made the appropriate steps for rehabilitative therapy, has successfully passed the Rushford program, and a secondary program which validated she has been clean from drug usage since October

13

2009.  The Plaintiff affirms she successfully passed a drug test to become a

security guard in August 2011, yet the case plan worker wants to assert authority

which suggests that hair samples must be submitted to DCF despite having no

such court orders which were issued to provide such authority.

58.  Plaintiff believes the living accommodations which she currently has

available to her at $1,000 per month for a three bedroom home with amenities

such as a garage and a backyard cannot be duplicated in the open market, and

be accessible to the Plaintiff's job and parenting responsibilities which she

believes she has earned the right to resume—without the interference of

government agencies which have a history of inappropriate assertion of authority.

59.  Therefore, for good cause shown, the Plaintiff seeks federal court

intervention because DCF's conduct is alleged to be outside of it's "lawful

authority".


## E.  CAUSES OF ACTION

60.  The Plaintiff seeks the full restoration of her parenting rights through

declaratory relief from the federal court because DCF Social Workers have failed

to protect the Constitutional and civil rights of the biological parent as paramount

over the rights of a temporary foster care placement.

61.  The Plaintiff seeks damages under the Victims Mandatory Restoration Act

of 1996 of $1 Million in damages against the State of Connecticut, the

Department of Children and Families for issuing "wanton", "neglectful", and

"malicious" reports which contained fraudulent representations of the Plaintiff's

efforts to properly correct her behavioral tendencies and for the attempted

damages to her "proper and respectful" relationship with Jim Vinci.

62.  The Plaintiff seeks the repeal of the Rules of Practice in the State of

Connecticut, which, since 1967, which have unlawfully circumvented the

prohibitions ("shall not") in Connecticut General Statute 51-14 of the use of "such

rules" in the "abridging", "enlarging", and "modifying" the subtantive rights of the

Plaintiff as a biological parent by the expansion of the "jurisdiction of the courts".

63.  The Plaintiff seeks relief from the application of these unlawfully acquired

rights of self-empowerment of the courts by the use of the words "judicial

discretion" which has empowered the juvenile court judges in a manner which

was prohibited by Connecticut General Statute 51-14.

64.   The Plaintiff seeks a declaratory for a consent decree be issued by the

federal court to place all modifications of the Practice Book Rules in the State of

Connecticut under the administration of federal court oversight.


## F.  REMEDIES AND RELIEF

65.  The Plaintiff seeks an immediate injunctive and declaratory relief be

considered as an emergency measure by the U.S. District Court for the matters

under consideration in DCF Case ID# 204063, and in the matters under

consideration in the Middletown, CT Juvenile Court  in K.L. (M08-CP09-012626-

B) and J.L. (M08-CP09-012627) under the authority and provisions set forth in

the current Consent decree on the Department of Children and Families issued in

3:89-CV-859 (CFD).

Respectfully Submitted,

*Carla Levesque*

*Carla Levesque*

Carla Levesque

Self-Represented Party

4 Eleanor Lane

Portland, CT 06480


Certification

In accordance with the provisions set forth in the Federal Rules of Practice, a

copy of this filing is being sent certified mail, return receipt requested to the

following list of parties listed on the attached list of Defendants.

*Carla Levesque*

*Carla Levesque*

Carla Levesque

September 13, 2011

Date

16

## Federal Case Filing Against the Following Individuals

| Hartford DCF | |
|---|---|
| Dannel Malloy: Governor, State of CT | Capitol Office Building<br><br>210 Capitol Avenue<br><br>Hartford, Connecticut 06106<br><br>Phone #: (860) 566-4840 |
| Joette Katz: Commissioner of the Department of Children and Families | 505 Hudson Street<br><br>Hartford, CT 06106<br><br>Phone #: 860-550-6300 |
| Attorney Susan Hamilton: Attorney in Private Practice | The Law Office of<br><br>Susan I. Hamilton, LLC<br><br>P.O. Box 330125<br><br>West Hartford, CT<br><br>06133-0125<br><br>Phone #: (860) 305-7149 |
| | |

| Hartford DCF | |
|---|---|
| Ama Tandoh, Social Worker | 505 Hudson Street,<br><br>Hartford, CT 06106<br><br>Phone #: 860 550-6300 |
| | |

| Middletown DCF | |
|---|---|
| Stephanie Anderson: Social Worker | 121 Main Street Extension<br><br>Middletown, CT 06457 |
| Shelly Brodsky: Social Worker | Phone #: 860 638-2100 |

| | |
|---|---|
| **Attorney Brian Chizinski: Attorney in Private Practice** | **Oakley & Chizinski, LLC**<br><br>**516 Main St Suite #7**<br><br>**Middletown, CT 06457**<br><br>**Phone #:  860-342-2302** |
| | |
| **Attorney Michael Dwyer: Attorney in Private Practice** | **516 Main Street**<br><br>**Suite 16-17**<br><br>**Middletown, CT 06457**<br><br>**Phone #:  860-638-1128** |
| | |
| <div align="center">**Meriden DCF**</div> | |
| **Melissa Testa: Social Worker** | **Phone #: 203 238-8427**<br><br>**One West Main Street,**<br><br>**Meriden, CT 06451** |
| | |
| <div align="center">**C.R.I (Community Residences Inc.)**</div> | |
| **Sharon Romero: Parent Aide/Reunification Worker** | **205 Kelsey St. 2nd Floor** |
| **Erica Kane: Parenting Aide/Reunification Worker** | **Newington, CT 06111**<br><br>**Phone #: (860) 665- 9478<br>Extension 412** |